First case on our call today, agenda number 1, number 128186, is People of the State of Illinois v. Andre Hilliard. Ms. Bourland, for the appellant, are you prepared to proceed? Good morning, Your Honors. I am Caroline Bourland with the Office of the State Appellate Defender for Appellant Andre Hilliard.  May it please the Court, Andre Hilliard, an 18-year-old offender, alleged in a pro se post-conviction petition that the mandatory 25-year firearm enhancement attached to his 15-year sentence for attempt murder was unconstitutional as applied to him after the appellate court declined to consider that same argument on direct appeal. The issue in this appeal before this Court is very clear and narrow. Did the circuit court err in summarily dismissing that claim at the first stage of proceedings? This case does not yet present a question on whether the firearm enhancement actually is unconstitutional as applied to Andre. The only issue is whether that claim is legally frivolous or factually fanciful. Notably, the State agrees that the reason cited by the appellate court to affirm the summary dismissal was improper, specifically that Andre did not have to have a de facto life sentence to make this claim work. Also, additional arguable legal and factual basis exists in the record to support each element of Andre's claim. Thus, summary dismissal was improper and this Court should remand for second stage proceedings. It is well established that post-conviction petitions may only be dismissed at the first stage if they lack an arguable basis in law or in fact. This is a deliberately low threshold where petitions are to be viewed liberally in the petitioner's favor. Andre's petition did not lack either an arguable basis in law or fact. First, a petition lacks an arguable basis in law when it is based on an indisputably meritless legal theory. We've cited State and Federal cases in the brief that the State does not dispute, that even when there is a conflict or split in case law, the existence of at least some case law to support the petitioner keeps that claim from being legally frivolous. Here, the opening brief cites four different appellate court decisions from three different districts in Illinois, where courts have either directly found firearm enhancements unconstitutional as applied to juveniles. Sotomayor, yes. Ginsburg, I have a question for you. Is it within the legislature's purview to enact a mandatory firearm and enhance ‑‑ sentencing enhancement for adults? Yes, Your Honor. Okay. Thank you. Yes. And our position would be that ‑‑ I'm sorry. Go ahead and complete your answer, then I'll ask the question. Oh, okay. Our position would be ‑‑ our claim is based on ‑‑ it's a Leon Miller claim that even if a claim is facially unconstitutional, it can be unconstitutional as applied to a particular defendant. And I would note in People v. Huddleston, one of the arguments that the State made was that something ‑‑ it should reverse Leon Miller. It asks this Court to reverse Leon Miller because it found that any time you say something is unconstitutional as applied, it impacts the fact that the legislature made that judgment. And this Court said, no, it's just a very narrow decision in that regard, so it does not undermine the legislative intent. It just recognizes that for some defendants, it's unconstitutional as applied to them. So, counsel, you were talking about cases and you referred to those cases where people were juveniles. Of course, your client was not a juvenile. He was 18. How does that impact your argument? To that end, there's also additional legal support for that claim. And, for example, the State does not dispute that emerging adults may also raise this challenge. It agrees, as this Court has held recently in People v. Clark and People v. Moore, that young adults, even all the way up to age 24, have long been considered as having the same mitigating qualities of youth in Illinois. And this Court, in Thompson and Harris, has allowed emerging adults to make claims traditionally reserved only for juveniles through the Post-Conviction Hearing Act, where they can develop that claim. And then following that law, the appellate court has repeatedly, in numerous cases that we cited in the briefs, allowed emerging adults to advance to further stages of post-conviction proceedings where they can show that they functioned like a juvenile at the time of the offense. And that's what Andre is trying to do here, is to get a hearing to get counsel to help him develop this claim, to show why these cases that the appellate court has held, where firearm enhancements were juveniles, also applies to him, based on the evolving science and case law supporting him. Now, of course, there's been an amendment in the law that now says that the trial court has discretion as to whether or not to impose these enhancements. Are you asserting a claim based on that at all? We don't assert a specific claim based on that, but that's definitely part of what we cite as the evolving standards of decency to show why society has evolved. Our community now recognizes that it's not fair to impose these enhancements on every It does not apply, per se, to him, but it does apply to the extent of the court held in People v. Aikens that it's relevant in considering as objective evidence of how society has evolved today. And then we also ask this Court to look at that in combination with the fact that the statute also the legislature now also allows parole for adults, emerging adults up to age 20. So someone in Andre's position today who was committed the same offense as him, was even two years older than him, would be given a chance at parole after 10 years. And someone even convicted of murder who killed someone, even a worse crime than Andre, is given a chance at parole after 20 years. So these facts work together to show why society has evolved. So when you look at Andre's mandatory sentence, it is unconstitutional, at least at the first stage. It's arguable that it's unconstitutional as applied to him. And the fact that the legislature did not make those statutes retroactive is something that could certainly be considered when looking at the merits of the claim at second stage. But numerous courts, Aikens relied on the new firearm enhancement statute to find evolving standards of decency. And then Minifield is an appellate court decision where they relied on the new parole statute to say that that's evolving standards of decency for emerging adults. So it's taking that together. Counsel, if I understand your argument correctly, you're saying that he pled sufficient facts to get past the first stage. Correct. It was not frivolous or patently without merit. Yes, Your Honor, and I can address some of those facts. Why don't you point those out to me? Yes. So, yeah, so as this court held in Hodges, a claim lacks arguable merit when it is fanciful or delusional. That's when it lacks an arguable basis in fact. Here we have the record definitely confirming that the trial court imposed the mandatory firearm enhancement on Andre. The court went through a specific process of saying I choose 15 years for the attempt murder, followed by three years of mandatory supervised release, and then confirmed what the enhancement was and attached that. There's also compelling facts in the record to show Andre was immature at the time of the offense at the first stage, such that, again, as Your Honor said, that it's not patently without merit. The very factors that are now considered before courts impose these enhancements on juveniles. For example, Andre had no prior criminal history prior to this offense, which was similar to the defendants in Aikens and Barnes. This is rather remarkable given the gang-infested neighborhood where he was raised, the family issues he had, and his mental health and anger issues. For example, his father was a drug dealer who was very aggressive toward him. Picked on him.  This clearly impacted Andre because the hospital records where he went to Heart Grove Hospital for the second time at age 14, both he and his mother mentioned this action from his father in being a serious stressor in his life. At the hospital, the staff noted chronic environmental problems for Andre, and they diagnosed him with a provisional diagnosis of recurrent depression, where they put him on different forms of medication. And then in the hospital, he improved significantly. But once released, his parents did not ensure he took his medication. His mother did not even take him for follow-up appointments. And, in fact, this child, with these issues, was not even required to go to high school. Certainly, someone who only has an eighth-grade education would be expected to be more immature than the average 18-year-old. And that is supported here by Andre's outbursts in behavior in court, the fact that he chose to sit through trial on the bullpen, the fact that he was not participating in the trial. And the fact that he was participating in the precinct investigation process specifically designed to help him bring to light facts relevant to his case. Miller v. Alabama and several Illinois cases have held that one of the key signs of juveniles that requires that they should have different sentencing than adults is because they are often so immature that they can't help themselves in court. They distrust prosecutors and police. Here we have a defendant actually doing that. We have evidence of a defendant who can't help himself in court. So ultimately absolutely nothing in the record renders delusional Andre's claim that he was immature at the time of this offense. And specifically, the record instead provides compelling evidence to support that claim. But the trial court could consider none of that before imposing the mandatory enhancement, which, again, four different appellate courts have found can be unconstitutional as applied to juveniles. And I would just want to note in those cases as well, every single one was the principal offender, like Andre. In three of those cases, I know in two of the three of those cases, sorry, one second, the enhancements led to sentences short of de facto natural life. And then in two of those cases, just like this case, the sentence imposed for the underlying offense was actually higher than the minimum. So there's literally every way you want to come at this. There's a case that supports Andre. And when we are at the first stage of postconviction proceedings, that's all he needs, combined with not having delusion, not having his factual claim being delusional when we have all of that evidence. I would also like to address the State's request to affirm the summary dismissal of the postconviction, of the postconviction petition for procedural reasons that were not cited by either the trial court or the appellate court. First, the State claims that this is raised judicata, the claim is barred by raised judicata. That claim can be easily dismissed. Though Andre tried to raise this claim on direct appeal, the appellate court rejected that and specifically directed him to the Postconviction Hearing Act via Thompson. The State argues that the court's rejection of a separate claim to the excessive sentence, that the trial court abused its discretion in imposing an excessive sentence necessarily has a raised judicata effect on the as-applied challenge as well. But that was actually a completely different claim. And in that claim, the analysis specifically focused on the underlying 15-year sentence, not the ultimate 40-year sentence. In fact, Andre had cited a case, People v. Maldonado, where the defendant had received a 40-year sentence, which is the exact term of years that Andre got. And the court said, the appellate court said, we're not going to consider that case that's inapplicable because there the defendant received a 40-year sentence, but here the trial court imposed a 15-year sentence for the underlying offense. And I would note that so had the court believed that the 40-year sentence was proportionate, it could have just dismissed the as-applied challenge as well and said, even with this firearm enhancement, his 40-year sentence is proportional. It did not do that. And notably, two of the three justices that resolved this case on direct appeal also presided over this case below in this case, and they specifically said this claim is not barred by raised judicata. So obviously, these justices who ruled on this excessive sentence claim on direct appeal did not believe that anything about that had a raised judicata effect on this case. The State's claim of forfeiture should also fail for three reasons. First, we're at the first stage, again, where we only need to show a claim that is not arguably frivolous or fanciful in the law. At the time Andre filed his petition, this court had held in Thompson and Harris that emerging adults may raise challenges to their sentences in post-conviction petitions. It had never said they had to be raised at sentencing or that a claim would be forfeited if it was not. So Andre was directly following what the appellate court instructed him to do, what he could find support in what this court's order said to do by doing exactly what the appellate court said and putting his claim in a post-conviction petition. Second, and maybe perhaps also the most crucially, Andre's claim would be much different if he were forced to raise this claim as an effective assistance of sentencing counsel. In his pro se petition, one of the specific sources he cites for support is People v. Aikens, and he notes how in Aikens, the court relied on the new statute making firearm enhancements discretionary for juveniles to show evolving standards of decency. That statute only came into effect in 2016 when Andre was sentenced in 2014. So if we are only looking to what defense counsel, sentencing counsel, could have done in 2014, we are asking this court or the court has to overlook evidence in a pro se petition. So having a hard and fast rule that these claims must always be raised at sentencing is not sufficient or is not a good rule to put on these clients. Whether exactly where this claim should have been raised, whether trial counsel was ineffective, whether direct appeal counsel was ineffective, or whether, again, it's a stand-alone claim that can be raised on its own, these are all potential claims. And then as a final point on this matter, I would note that even if the only way that Andre could raise this claim was to allege ineffective assistance of sentencing counsel, that is merely a procedural hurdle that can be overcome by counsel at the second stage. This court has repeatedly said that at the first stage, the courts are only to address the claim's substantive virtue, not its procedural compliance. And one of the specific duties that this court has held that post-conviction counsel has at the second stage is to make the allegations necessary to overcome forfeiture. That understands that some clients, some pro se petitioners, will not know all of this themselves. They won't know how to raise these claims perfectly. And indeed, pro se petitioners are not required to plead every legal element of a claim. So particularly in this case, where we have a defendant who has repeatedly tried to raise this claim, was told by the appellate court, you can raise this in a post-conviction petition. And then he did exactly what the court directed him to do. It would be wildly unfair to affirm the summary dismissal of the petition again, to again not consider the merits of this claim, just because there's four words missing from his petition, ineffective assistance of counsel. So for all of these reasons, we say that the State's procedural arguments are inappropriate, particularly in this case. Particularly since neither the trial court nor the appellate court found any of those procedural reasons existed. They were able to address the substantive claim on the merits. It is all outlined for the court. And this court can do that as well. Does this court have any other questions about the argument? I will conclude then. Reversing the summary dismissal of Andre's post-conviction petition will cause this court to do nothing other than acknowledge existing case law in Illinois that supports Andre's claim and gives it an arguable basis in the law and reaffirm the well-established principles of the very low threshold at the first stage. Such a holding would not mean that the mandatory enhancement actually is unconstitutional as applied to Andre or even create any new law. All of the law supporting Andre's claim already exists. On the other hand, affirming the summary dismissal of Andre's post-conviction petition when it has support, legal support, statutory support, case law support, and is not factually delusional would bring Illinois back significantly both in terms of what constitutes a constitutional, the gist of a constitutional claim under Hodges and in terms of how Illinois is evolving to reflect more lenient treatment toward emerging adults. At the bottom line, the issue is very simple. Andre's claim has legal and factual support. For that reason, it could not be dismissed at the first stage of proceedings, and we would ask this court to reverse that decision and remand for second stage. Thank you. Thank you, counsel. Counsel Flapp, please. May it please the court. Counsel, I am Assistant Attorney General Gopi Kashyap on behalf of the people of the state of Illinois. I'd like to start sort of by backing up a little bit and talking about the claim that petitioner is raising. Petitioner's claim is a challenge to the mandatory 25-year enhancement, but this is not the first time this court has addressed challenges to the mandatory firearm enhancement. We're not speaking on a blank slate here. When the General Assembly moved from indeterminate sentencing to determinate sentencing and enacted these enhancements, the court addressed a number of challenges to them, under the portion of penalties clause, under the separation of powers provisions, under due process principles. So the court looked at the legislative history. It looked at the intent that the General Assembly had in enacting these enhancements. I'll note that it was a unanimous passage of the enhancements. And the court looked at everything, and it said there is no substantive difference between the General Assembly enacting these enhancements as mandatory add-ons or directly enhancing the underlying sentence itself. And so substantively, the mandatory enhancement, what it does is it enhances the sentence based on the enhancing factors. And so it's the resulted sentence here, the minimum 31-year sentence, that is at issue. That's how the court looked at it when it addressed facial challenges to these very same statutes. And there is no reason why the court would address this very differently under a proportionate penalties clause challenge that is as applied. But the argument is we should look at it differently because we're dealing with an emerging adult, someone who's 18 years old. And so that's the difference, isn't it? The General Assembly, when it enacted these enhancements, was well aware of youth, and specifically that young adults are 18, and then they are 18. They are young. They have qualities of youth. This court reaffirmed all of these principles recently in Clark and Moore, where it explained that since 1894 we've known this. The General Assembly has known this. This has been part of our law. And when it enacted the enhancements, it was aware of that. The General Assembly knew that when it enacted these enhancements, they would apply it to young adult offenders. Petitioner cited in his opening brief People v. Mosley. In that case, the court observed that, you know, we know that 18- to 20-year-olds tend to be the ones who use firearms more in offenses. And so the General Assembly considered all of these facts and circumstances. And the court has said the General Assembly can decide, based on the severity of the offense committed, and particularly the dangers that firearm enhancements pose, can decide that the lengthy sentence is permitted. The proportionate penalties clause doesn't require the General Assembly to weigh the restorative potential of an offender greater than the seriousness of the offense. And the court has repeatedly said that. It said it again in Cody very recently. It has said it in Clark. I mean, over and over the court has said this principle, that the proportionate penalties clause doesn't place that limit. And so however you look at it, what we're looking at is the 25-year plus six, and it's the 31-year minimum. And we're looking at whether that enactment, when applied to this offender, looking at his circumstances, can Petitioner show, is it arguable that the General Assembly's judgment there was clearly outside the bounds of permissible sentencing, wholly disproportionate to the offense committed, and so shocking that our community would be so shocked that we would have given this person that sentence. Leon Miller is that case where the court has found that. And the court really heavily focused on the seriousness of Leon Miller's conduct and his reduced culpability. And it looked at specifically the fact that he didn't arm himself with a firearm. He had a minute to contemplate his actions. And ultimately what happened, he was 15, and so what ultimately happened to Leon Miller was that, whether the sentence was mandatory or discretionary, the point that the court was making was that a life sentence for this offender is shocking to our moral sense. It's such an outlier that the General Assembly really couldn't have contemplated that it would apply to these circumstances. And so the limit that the stage where this is at, the first stage of dismissal, aren't those things that are to be fleshed out at the second stage and where the court makes whether or not to move it on to the third stage? It seems like what you're saying is that we shouldn't let it go forward because do you think the record demonstrates that? Or why is it that you think it shouldn't be? No. I think the record is very clear that this sentence, the 31-year minimum sentence, is proportionate to this particular offender based on the seriousness of the offense. But do we get to the merits of the claim at the first stage? Yeah. The standard is whether the claim is frivolous or patently without merit. And this claim has no legal merit under the standards established by the Proportionate Penalties Clause. There is simply, if you look at the facts that he has alleged, that he was young, that he had some circumstances that were mitigating. Those are basically the two facts. He had no criminal history, right? When we look at those facts, they don't establish that the General Assembly's judgment was so shocking, given the seriousness of his offense. We do have to look at the offense that was committed, and that was the focus of Leon Miller was the offense that was committed and the culpability of the offender during the offense. So is he not entitled to establish a record, as we have repeatedly indicated in various cases, to support his claim? He did, Your Honor, support his claim already. So that brings us back to the procedural bars. This is a claim that is typically raised at sentencing and should be raised at sentencing and has been raised at sentencing. In People v. Huddleston, the defendant raised this type of claim at sentencing. In Leon Miller, he raised the claim at sentencing. The trial court is actually the one that found Leon Miller's sentence unconstitutionally disproportionate and refused to impose it, and it was the State that took the appeal. And so when the claim is raised at sentencing, as it properly should be raised at sentencing, at the time, so here in 2014, this claim was readily available to him. All of the facts that Petitioner has cited in his petition are in the PSI or in the trial record, and it were available to him. Miller was decided two years before that. Dr. Gurr's opinion that young adults are impulsive and should be more akin to juveniles was filed in Patterson v. Texas in the U.S. Supreme Court in the late 90s, early 2000s, so at least a decade before Miller. This is not new. This was all reasonably available to him. He had to raise this claim at sentencing. That is the court's established jurisprudence on these claims. He didn't raise it at sentencing, and so when he got to direct appeal and tried to raise the claim, the appellate court properly said this claim is forfeited. Those are established forfeiture rules. You know, there has been sort of, you know, erosion of forfeiture since Miller. I think there's a lot of, you know, evolving, you know, cases, the court's decisions, and Thompson and Harris, I think, created some confusion in the appellate courts, and it's evident from the decisions here. Thompson didn't say that once a petitioner raised a challenge to a mandatory minimum sentence that he could automatically satisfy the cause and prejudice test. You still have to go through the process that the Act provides. Harris didn't say that that particular. Well, let's say that all those things are true and that his counsel at sentencing in the trial court erred and then that wasn't raised by appellate counsel, and under our rules, isn't he allowed to flesh that claim out in a post-conviction case? So it depends on what the claim is that we're talking about. So the claim itself, the challenge to the minimum term, could have been raised at the time of sentencing. He didn't raise it. So on direct appeal, he tried to raise it, and the appellate court said, no, this is forfeited. He didn't argue on direct appeal. How about the constitutional as applied claim? He did raise that on direct appeal, and the appellate court said that was forfeited because he didn't raise it in the trial court. Did he make an argument of ineffective assistance of counsel? No, he did not. And if you're saying that it should have been raised and wasn't raised, wouldn't that be an arguable claim of ineffective assistance of counsel? No, because we don't think that there's any probability or reasonable probability that his sentence is disproportionate under this court's statute. Well, let's say that just for the sake of argument that there might be, that there is a question of that, and there is some. So would that be a claim that could be brought? No. I mean, it wasn't in the petition. So the Court's jurisprudence on that is very clear. In two Jones decisions cited in Petrenko, which we cite in our brief, this Court repeatedly said that claims that are not raised in a postconviction petition cannot be raised for the first time on appeal, and that the avenue for any claims that were not raised in a postconviction petition is to seek leave to file a successive postconviction petition and establish the cause and prejudice test. Petitioner has not alleged this claim in the postconviction petition. There is no semblance of an ineffective assistance of counsel claim. Now, counsel argues that it's because he was pro se, so how were he to know? But these are claims that are raised routinely, and we know that ineffective assistance of counsel claims are things that pro se prisoners are aware of. They raise them all the time. And he could have raised it here, and he didn't. But putting that all to the side, you know, I think there's this underlying problem here where his argument is that the 25-year enhancement or the 31-year is unconstantly disproportionate because we didn't consider these qualities of youth or his social information or all these mitigating circumstances that he cites. The problem is, is that those all of those facts were considered when the appellate court addressed his claim, which was under the Illinois Constitution, that his sentence was too long, was constitutionally disproportionate. His 40-year sentence was too long. And the Illinois appellate court looked at all of that, and it said, okay, I will look at these circumstances, your youth, your factual circumstances, the social history, all of the stuff that's in the record. And they considered all those factors, and it said, no, 40 years is not too long for this Petitioner's defense. That holding necessarily means that the lesser term cannot be too long. It doesn't – it's not clear what relief he could obtain other than to re-challenge his 40-year sentence. If he were to prevail on the 25-year enhancement, then he would be relitigating the 40-year sentence, which the – which was within the facially constitutional range. There is no question here that the General Assembly's range is facially constitutional. It's just when applied to this offender. So if 40 years is the proportionate sentence, considering all of the circumstances, then necessarily 31 years is, and so is the 25-year component, and so is the 6-year component. This is why the claim is indisputably meritless. There – all the facts he has cited were in the record when the appellate court issued his decision. He cites a couple things now in his petition that were not considered by the appellate court, specifically the changes in the law, in the juvenile law. But, of course, those were changes in juvenile law. The General Assembly made changes prospectively for juvenile offenders. Those changes for juveniles did not affect juvenile sentence before their effective date. So juvenile sentence under the same regime with a mandatory minimum of 31 years, if they – if the juvenile got 38, we would have no Miller problem, and it would still be constitutional under our Constitution. And so that's one part that is not really relevant here because it doesn't apply to Petitioner. The second part, the sort of a broader point here, is that, you know, Petitioner's position is basically that any time an appellate court issues a decision that, you know, suggests for that particular offender and the enhancement is disproportionate to that particular offender, that means that any young adult who received the mandatory enhancement or a sentence that consisted of that enhancement can necessarily surpass the first stage. But that can't be true because the portion of penalty clause is very individualized, and it can't be that every time a new decision comes out between the time the Petitioner should have raised the claim at sentencing and by the time he files his post-conviction petition, there are some cases that have come out, so that means that he can just now raise his claim. Similarly, if the General Assembly keeps enacting these provisions, which we know it is, it is considering these policy questions, it is deciding what to do with these offenders, their enactments don't mean that every young adult can now raise constitutional challenges. Those changes are not necessarily indicative of shocking the moral sense, particularly with their perspective. And to the extent they are retroactive, then again, we have hopefully the young adults are getting relief if they're retroactive under those provisions. And so, you know, I would just remind the Court that the shift that happened, you know, way back when, when we shifted from indeterminate sentencing to determinate sentencing, these very same challenges were made. We moved from a scheme that was about parole and about rehabilitative potential, and we moved into a scheme that was more about deterrence and retribution and other goals of punishment. And the Court evaluated our constitutional principles, and it said the General Assembly has power to enact mandatory minimum sentences. And even when those sentences are long, even when they're applied to young adults, even when they're applied, the Court has repeatedly said that mandatory sentencing is within the legislative authority. So really what this case is about is, is this petitioner's sentence so shocking given the nature of his crime and his circumstances? And we don't think it's even a crime. He armed himself with a firearm. He decided that he was going to kill someone because he had a grudge against them or there was some dispute, you know, between them. And he waited. It was dark. Killingsworth was talking to neighbors outside a shared porch. And seconds before, seconds after the neighbors went in, petitioner approached and started shooting. He hit a window. There were children inside the apartment because Killingsworth was visiting his children. This is a public housing complex. There are houses nearby. And Petitioner didn't stop shooting. He kept chasing him as Killingsworth ran away. And so these facts, this culprit, and he didn't act with anyone else. He didn't, there's no suggestion that there were pure influences, that, you know, there's nothing in the record to show that. Petitioner hasn't even alleged that for this crime. He has generally asserted that he had been involved in gangs. But those facts were in the record, you know, when the trial court sentenced him to 40 years and the appellate court upheld that sentence. And so what we have here is a very serious crime. It doesn't reflect rehabilitative potential. Petitioner has cited the fact that Petitioner stopped school in either fifth grade as he alleged in his petition or eighth grade as the PSI stated. There's no information of what happened after that. All of that information is within Petitioner's power to provide. He could have said that in the petition. But what it does, the PSA does say is that Petitioner had no educational goals. He had no desire to rehabilitate himself. There is nothing in the record that suggests that this is a person who could be rehabilitated. But even if this person could be rehabilitated, the minimum 31-year sentence is not inconsistent with that. The General Assembly knew about youth. It understood this mitigating effect, and it decided that this was the appropriate sentence. You know, at the end, this is just not the outlier case where our Constitution comes in and says that this sentence could be constitutional or unconstitutional. This offense is not wholly disproportionate to the – it's not even arguable that it's wholly disproportionate to the offense committed, given the level of culpability and the seriousness of the offense. I think there was some discussion of Maldonado and sort of how the trial court and the appellate court looked at this sentence, and I just want to touch on that really quickly. In Paragraph 52, the appellate court, when distinguishing Maldonado, explained that Petitioner's sentence was 15 years less than the attempted murder, but Petitioner's actual max was life. The point of that discussion was because Petitioner had argued that Maldonado was dispositive of his case or at least made an arguable – or made it so his 40-year sentence was disproportionate. And what the appellate court was saying there was, but Maldonado's maximum sentence at that time was 40 years. And so the court was distinguishing, and it was easier to distinguish on the attempted murder because the maximum sentence for this Petitioner was life. And so the comparison the court was trying to make fit better with attempted murder. What is clear from the appellate court opinion on direct appeal is that it did consider the 40-year sentence. Petitioner framed it as a challenge to the 40-year sentence. He framed it as a constitutional challenge to the 40-year sentence. The appellate court considered the presence of mitigating factors. And it said that the sentence was not manifestly disproportionate to the offense. So it's not clear how it could be wholly disproportionate to the offense. The court also said it was not against the spirit or purpose of the law. So it's not clear how the lesser sentence of 31 years could be morally repugnant to our society, even considering his age and the mitigating factors of use. We don't think it's arguable that he can make out a claim, and were Petitioner to make out a claim, it would be inconsistent with the holding on direct appeal. And finally, one point. To the extent the court enforces the forfeiture of their procedural rules and remands this case for second-stage proceedings, we would just ask the court to take note that the State is not prevented from raising those procedural bars at the second stage. We did not participate in the trial court at the first stage. We're not allowed to participate then. And, you know, this Court has said that trial courts, you know, can, if they think it's up, unless the Court has any further questions, we ask the Court to reverse the, or affirm the judgment below. Thank you very much. Counsel for the appellant. Thank you, Your Honors. I want to first address the State's argument that this is just an enhanced sentence from the legislation, not a mandatory firearm add-on. The State says that every court has found this, that this Court has found this in the past. I'm not going to say every single court, but I can give you language from each court that says this. People v. Sharp is the most recent case from this Court. This case involves the constitutionality of the 15, 20, 25 to late life sentence enhancements amendments. These amendments add a mandatory additional term of years to whatever sentence would otherwise be imposed. That is exactly what the statute says. The statute specifically says that the Court is to impose, sorry, the Court is to impose a Class X felony for which 25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the Court. This was a hot topic during legislative debates on the firearm enhancements. One of the representatives said, what exactly do we mean by that? And one of the sponsors of the bills responded. This bill will require the sentencing judge to decide what the terms of imprisonment should be on the offense based on sentencing factors other than the firearm. After determining that, the judge will then determine the amount of imprisonment specified because of the firearm enhancement. So the Sharp found that was constitutional. That's correct. Yes. So mandatory sentencing is as difficult as that may sound. For many, many years, this Court has found that's constitutional. Your argument is the next step, that as applied to this person, it violates the Proportional Penalties Act, and it's actually the Constitution. So, therefore, we need to look at this defendant and say, does this defendant and who he is mean that determination by the legislature, which this Court has found to be constitutional, is unconstitutional as to him? Right? That's kind of where we are.  So certainly the leading case on proportional penalties in this kind of context would be Leon Miller. Could you compare the facts in Leon Miller, where this Court found this mandatory sentencing violated proportional penalties against him? Could you contrast the facts in Leon Miller to the facts in this case? The facts are obviously different. That was a 15-year-old who was found guilty of accountability. But Leon Miller is not the only case on this issue. There's also appellate court authority, and you don't have to – the only time this Court has found a violation of proportional penalties in terms of a mandatory sentencing has been Leon Miller. Tell us more about Leon Miller. He was 15, and what else? What were the facts in that case? He was 15, and the facts were essentially that some older kids came up to him and said, can you look out for us? I don't think he knew exactly what they were going to do. He did see that they had a gun, and then he did act as a lookout for them, and then he ran away when he heard gunshots fired. So he was a lookout. He didn't fire a weapon. But all of those – he ran as soon as there was a shot fired. And most importantly, of course, in terms of the case we're talking about here, he was a juvenile. Very different facts here, correct? It is, but we have all these different cases from the appellate court that have applied this to principal offenders, to emerging adults, to people who were older than 15. So we have – all we need at the first stage is an arguable basis in the law, and we have that here from all of these cases. And you don't have to – And you're going to ask this court to extend our decision-making beyond Leon Miller, then? I'm not asking this court to create any new law at all. It is to say, here are the cases from the appellate court that have already found this, and all you need is an arguable legal basis. And that is what this court has repeatedly said in Hodges. And I would – there was a case in the – Cathy, where the appellate court – where – I'm sorry. At the time the defendant had his direct appeal, it involved a Patrick issue where you have to make the determination on whether you're going to bring in prior convictions to impeach the defendant if he testifies. There was appellate court case law that supported the defendant at the time of his direct appeal, but not Illinois Supreme Court case law. And the defendant raised that claim. And the defendant argued in a pro se petition that his appellate counsel was ineffective in failing to raise that claim on appeal. And the state said in response on appeal, no, there was no – Patrick didn't exist yet. And this court specifically said there were cases from sister states that supported his argument, and there was – the arguments were being made at that time. And that gave him enough of an arguable basis. So here we have – Kagan. But the appellate cases that you're relying on, are they juveniles? As far as the sentencing enhancement cases, they have only been addressed in juvenile cases. But they're not – So, so that you're saying that the appellate court has not accepted – it's not applied the theory that you're talking about in terms of emerging adults. This court has not either in Leon Miller. And you're asking us to take this next step. Is that what you're saying? I'm just asking this Court to find an arguable basis in the law. Because there are the cases finding juvenile sentencing enhancements unconstitutional. There's the separate line of cases initiated by this Court saying emerging adults can use the Post-Conviction Hearing Act to show why they function like a juvenile at the time of the sentencing. And no court has done that yet. I'm sorry, what? No court has done that yet. Several courts have. Zumann and Chambers were both first-stage post-conviction petitions where they were emerging adult offenders. And the Court advanced them to second-stage proceedings. Chambers was a knock-them-out, point-them-out case, or a point-them-out, knock-them-out case. Principal offender did some serious damage. Chambers – I believe Chambers was also a principal offender. And they've granted second-stage proceedings for them. They've said that – they've even – some of these courts – Woods was a first-district decision that said there's a catch-22 that even when you can't cite enough in your post-conviction petition to say that the science applies to you, the very purpose of the act is to allow a remedy on that claim. So whether this statute actually is unconstitutional as applied, the lower courts will resolve. I'm sure it will get appealed to this Court. And then this Court can decide whether to extend Leon Miller in that regard. But a record has not been developed yet, and it's not yet at the time where this Court makes that decision. This is a true Hodges claim. Has there been enough arguable legal basis and factual support? And when you have all this law, even though it is a novel case that we're combining the law, this law does still exist. And notwithstanding the fact that it is – it is factually distinct from Leon Miller, but it's very similar to many of the cases that have been cited in the appellate court. Does that answer Your Honor's question? I would also need – I think we've addressed that. Addressing the State's argument about why this could have been raised at sentencing, it very well could have been raised at sentencing. It very well could have also been raised at sentencing on indirect appeal. They could have raised an argument. However, he also has a stand-alone claim that is unconstitutional as applied to him. And he specifically relies on evolving standards of decency, which is a central component of a proportionate penalties claim. So where the ultimate fault lies, whether the ultimate remedy lies in this case – not remedy, but form of the claim – is to be fleshed out at the second stage. The court talks – or the State talks about how should he know defendants raise ineffective assistance of counsel claims all the time. There is not one case from this court or the appellate court in Illinois that has ever said these claims have to be raised at sentencing. On direct appeal, appellate counsel did not say trial counsel is ineffective. The appellate court said it's forfeited, you can raise this in a post-conviction petition. It didn't say that exact words. It said you're not foreclosed from raising this again in the circuit court. Directing to Thompson, where this court has said something in a post-conviction petition. If appellate counsel didn't know that this had to be raised as ineffective assistance of trial counsel, I don't know how a pro se petitioner could know this when no court has ever held that before. In terms of the Maldonado case, the State says that the court was just saying Maldonado, the maximum was 40 years. I'm going to read this as the appellate court decision here. Unlike in Maldonado, defendant was not sentenced to the maximum available statutory term of imprisonment. Rather, he was sentenced to 15 years for attempt murder, 15 years below the statutory maximum. Any argument, especially at the first stage where you view the petition liberally in favor of the defendant, that the court was considering the ultimate 40-year sentence is incorrect. It specifically said that it was specifically repeatedly saying this is a 15-year sentence chosen by the court, the court did not exercise its discretion, and it declined to consider the firearm enhancement claim. So this claim is not barred by res judicata. A few other points. Since the time of direct appeal, the State says that the only thing has changed, or I think the State said the only thing he cited in his postconviction petition was the juvenile sentencing law. While that was all he cited in his postconviction petition, evolving standards of decency have also specifically shown that the legislature is focusing on emerging adults as well. They have made the parole statute for emerging adults. The legislative debates that we've cited in the brief specifically show they did that because they wanted to go farther than what the Supreme Court of the United States had done. They wanted to give 18- to 20-year-olds the same chance at relief as juveniles. So we are at a different posture than direct appeal. And the State makes the point that we are saying that now every person who received every emerging adult who received a firearm enhancement can make this claim. That's not true at all. It may give them a basis in the law because it keeps their claim from being legally frivolous. They do have to show their claim is not fanciful or delusional as applied to them. There could be circumstances where it's clear that the trial court would have imposed a sentence anyway. So thank you, Your Honor. Ginsburg. Thank you very much for both of your spirited arguments. This case, number, Attorney Number 1, number 128 and 186, people who are with the State of Illinois, Mr. Andre Hillenrath, will be taken under advisory. Thank you very much.